IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

ANDREA BAUMAN

    Plaintiff,

v.                                        No. 4:25-CV-1764

PENNSYLVANIA STATE UNIVERSITY     JURY TRIAL DEMANDED

    Defendant.

_____

## COMPLAINT

Plaintiff Andrea Bauman files the following Complaint against Defendant Pennsylvania State University, and in support thereof avers as follows:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is based upon 28 U. S. C. §1331, in that this Court has original jurisdiction over Count I, which is based upon a law of the United States of America, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et. seq. ("Title IX")

2. Plaintiff requests a trial by jury of the claims raised herein.

3. Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that Defendant has ongoing business operations in this District and certain events giving rise to the claim occurred in this District.

4. The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

1

## PARTIES

5. Andrea Bauman ("Bauman") is a 36 year olde female who resides at 66 New Liberty Road, Phillipsburg, PA 16866.

6. Pennsylvania State University ("Penn State") is an education and research university located in the Commonwealth of Pennsylvania that receives federal financial assistance and is subject to Title IX, with a principal place of business located c/o Office of General Counsel, 227 West Beaver, Avenue Suite 507 State College, PA 16801.

7. At all times relevant hereto, Penn State was acting through its agents, servants and employees, who were acting within the scope of their authority, in the course of their employment, and under the direct control of Defendant.

## FACTUAL BACKGROUND

### *Bauman's Participation in the Pennsylvania State University Butcher Apprenticeship Program*

8. On March 15, 2023, Bauman applied for the Pennsylvania State University Butcher Apprenticeship Program ("Butcher Apprenticeship Program"), sponsored by Penn State.

9. The Butcher Apprenticeship Program provides hands-on training and education for aspiring butchers and job placement assistance.

10. The Butcher Apprenticeship Program has two phases: a five-week course of study to learn the basics of butchering in a classroom setting, and then a

full-time paid apprenticeship position at a meat-processing facility located in Pennsylvania.

11. The internship offers competitive pay while the apprentice learns the basics of meat processing, support, and on-the-job training.

12. An apprentice receives 216 hours of technical instruction by Penn State faculty and educators, and 3,000 hours of on-the-job training, which concludes with a journey worker certificate in butchering from the U. S. Department of Labor.

13. In its advertising and marketing materials Penn State describes its Butcher Apprenticeship Program as matching career seekers with training and paid work experience while you learn.

14. Penn State proclaims that 100 per cent of the class is placed in the meat processing industry.

15. Penn State solicits and screens private employers that operate meat-processing facilities to employ student participants in the Apprenticeship Program.

16. Penn State maintains a list of 15 approved butchering companies ("Butcher Employers") that it refers to as its partners.

17. Once students are employed by a Butcher Employer, Penn State administrators collaborate with and supervise both the students and the participating Butcher Employers.

18. The Butcher Apprenticeship Program is administered by the Penn State College of Agricultural Sciences.

19. Throughout the application process for the Butcher Apprenticeship Program, Bauman interacted with Dana Ollendyke ("Ollendyke"), Penn State Extension Program Assistant; and Cher Harpster, Penn State Extension Energy Business and Community Vitality Extension Educator.

### *Bauman's Placement at Jubilee Hilltop Ranch*

20. Jubilee Hilltop Ranch ("Jubilee") has over 20 employees and operates a farm in Osterburg, PA, that produces grass fed, USDA inspected, dry aged beef, pastured pork, and eggs.

21. On June 21, 2023, after Bauman was approved for funding for the cost of the Apprenticeship Program through Pennsylvania CareerLink, Ollendyke informed Bauman that she spoke with Jubilee, which was available to interview Bauman on June 22, 2023.

22. On June 22, 2023, Bauman was interviewed by Ryan Salyards, General Manager of Jubilee.

23. On June 29, 2023, Bauman met with Ryan Salyards and Neil Salyards, the owner of Jubilee, at Jubilee's ranch and she was given a tour.

24. In July 2023, Ollendyke advised Bauman that she was formally accepted to the Apprentice Program, and on July 21, 2023, she would begin the

4

2023 Penn State education portion of the Apprentice Program.

25. On July 6, 2023, Ryan Salyards advised Bauman that she would be hired through the Apprenticeship Program, upon completion of the Penn State education portion of the apprenticeship at the end of August 2023, at which time she would begin working at Jubilee.

26. Bauman, as Apprentice; Penn State, as Program Sponsor; and Jubilee, as Employer, entered into an Apprentice Agreement pursuant to 29 C. F. R. § 29.7.

27. 29 C.F.R. § 30.3 provides that the anti-harassment provisions in the Equal Employment Opportunity regulations are applicable to all Registered Apprenticeship Programs and Apprenticeship Sponsors, such as Penn State.

28. On August 18, 2023, after completing the educational component of the Butcher Apprenticeship Program, Bauman commenced a paid apprenticeship at Jubilee.

### *Bauman Experienced Sexual Harassment at Jubilee*

29. Ronald Fine ("Fine") is a Jubilee Supervisor to whom all Jubilee employees report.

30. Fine trains and supervisors all employees.

31. Fine was Bauman's direct supervisor.

32. Shortly after Bauman commenced employment with Jubilee as a Butcher Apprentice, Fine subjected Bauman to a severe and pervasive sexually

hostile work environment that included telling Bauman that she was "sexy and beautiful", smacking Bauman on her butt, telling Bauman that she was pretty and saying that there were no cameras in the office, and that, "We can have some fun on the couch."

33.  On January 17, 2024, when Bauman was clocking out, Fine put his arm around Bauman at the clock station and kissed her forehead.

34.  Bauman advised Neil Salyards, owner, about what happened, and Neil Salyards responded that Fine "was only trying to comfort you."

35.  On January 17, 2024, Bauman was upset at a meeting because Neil Salyards and Ryan Salyards pulled her into an office and said they were having a meeting to discuss her attitude toward Fine.

36.  Ryan Salyards said that Fine "is his right-hand man", and that he was not going anywhere."

37.  Bauman began hyperventilating and crying, she was scared, and realized that Jubilee was not going to do anything about the sexual harassment.

38.  Bauman concluded that she had no choice but to resign.

### *Penn State's Failure to Investigate and Provide an Adequate Remedy*

39.  Immediately after advising Jubilee that she was resigning, Bauman reached out to Penn State Extension Program Assistant Ollendyke to inform her of what happened, stating that she could not return to Jubilee due to the sexual

6

harassment.

40. Ollendyke then set up a meeting with Jonathan A. Campbell, Ph.D., Meat Inspection Specialist, Associate Professor of Animal Sciences, at Penn State, and Bauman met with Dr. Campbell by Zoom remote video on January 19, 2024.

41. Dr. Campbell advised Bauman that someone from Penn State would reach out to her and offer support for the sexual harassment.

42. Three months later, on April 11, 2024, Suzanne Adir, Ph.D. Associate Vice President for Equal Opportunity and Access at Penn State, stated that she was made aware of the discrimination and sexual harassment, and she advised Bauman to contact Tanya Pasko, Administrative Support Assistant Case Manager at Penn State.

43. A meeting was then set up with Carmen Borges ("Borges"), Director of the Penn State Office of Ethics and Compliance, on May 3, 2024.

44. One day later, on May 4, 2024, Borges advised Bauman there was nothing that could be done, erroneously claiming that Jubilee was not affiliated with Penn State.

45. After being advised of the sexual harassment experienced by Bauman, Penn State failed to take any action to provide a safe environment whereby Bauman could either return to Jubilee; or place Bauman at another Butcher Employer within a reasonable distance of Bauman's home.

46. Penn State also continued to permit Jubilee to participate in the Apprentice Program.

47. Penn State failed to take appropriate measures to screen employer participants in the Apprenticeship Program, failed to require participating employers to maintain sexual harassment policies to protect apprentices, and failed to assist student apprentices who were subjected to sexual harassment at participating employers.

48. After being advised of the sexual harassment experienced by Bauman, Penn State did nothing to address and/or resolve this situation, thereby condoning sexual harassment at the workplace.

### *The Pennsylvania Apprenticeship and Training Council's Investigation*

49. The Commonwealth of Pennsylvania, Department of Labor and Industry, Apprenticeship and Training Office (ATO) conducted an investigation of the Pennsylvania State University Butcher Apprenticeship Program, including Bauman's complaint to Penn State and Jubilee's participation in the Butcher Apprenticeship Program.

50. On June 6, 2025, the ATO concluded that Penn State failed to company with multiple Pennsylvania and federal apprentice training program requirements (*See* Ex. A").

51. The ATO concluded that Penn State failed to provide sufficient evidence that it ensured Jubilee displayed EEO/complaint materials according to the requirements for a registered apprenticeship program.

52. The ATO concluded that Penn State failed to resolve Bauman's complaint received within 15 days of the allegation as required by 34 Pa. Code § 81.11; 34 Pa. Code §§ 81.61-81.64; 34 Pa. Code § 83.5(b)(1); 34 Pa. Code § 83.5(b)(21); 34 Pa. Code § 81.71; 34 Pa. Code § 83.10

53. The ATO concluded that Penn State failed to provide documentation of proof that the EEO Pledge was adequately displayed by the employer or that all parties associated with the apprenticeship were adequately informed of and periodically retrained on the EEO policy as required by 34 Pa. Code §81.11; 34 Pa. Code § 83.5(b)(20); Title 29 CFR 29.5(b)(21) and 30.3(c)(1); 29 CFR 30.3(b)(2

54. The ATO concluded that Penn State failed to provide documentation of proof that Penn State provided or that it required their associated employers to provide anti-harassment training to all apprentices as required by 29 CFR 30.3(b)(4)

55. The ATO concluded that Penn State failed to provide documentation of proof that Penn State provided the necessary level of oversight needed to ensure compliance with the Standards of Apprenticeship as required by 34 Pa. Code § 81.11; 34 Pa. Code §§ 81.61-81.64; 34 Pa. Code § 83.5(b)(1).

9

56. As a direct result of Penn State's deliberate indifference, Bauman suffered educational and financial harm.

## COUNT I

### VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

### 20 U.S.C. § 1681 et. seq

57. Paragraphs 1 to 56 are incorporated herein as if set forth in full.

58. Penn State failed to follow required Apprentice Program Training standards to protect against and remediate sexual harassment during Bauman's internship at Jubilee.

59. Penn State was advised of the sexual harassment that Bauman experienced.

60. Penn State acted with deliberate indifference by failing to take prompt and equitable remedial measures.

61. Penn State's deliberate indifference caused Bauman Plaintiff to suffer loss of educational opportunities and related damages.

62. As a consequence of the sexual harassment and deliberate indifference exhibited by Penn State, Bauman was deprived of equal access to educational opportunities.

WHEREFORE, Plaintiff Andrea Bauman requests that this Court enter judgment in her favor and against Defendant Pennsylvania State University and that this Court award Plaintiff all damages available Title IX, including reasonable attorneys' fees and costs.

/S/ Andrew S. Abramson, Esq.
_____

Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email: asa@aemploylaw.com

Attorney for Plaintiff Andrea Bauman

Dated: September 23, 2025